THOMAS A. COLTHURST (CABN 99493)
First Assistant United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

MARJA-LIISA OVERBECK (CABN 261707)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6809
    FAX: (415) 436-7234
    mari.overbeck@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN DOMINGUEZ (aka "Green Eyes"),<br><br>    Defendant. | **CASE NO. 21-CR-311 YGR**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date:  June 22, 2023<br>Time:            2:00 p.m. |

## I. INTRODUCTION

The government submits this memorandum in advance of the sentencing of defendant Juan Dominguez (aka "Green Eyes"). Dominguez pled guilty to one count of Conspiracy to Commit Assault with a Deadly Weapon/Assault Resulting in Serious Physical Injury in Aid of Racketeering, in violation of Title 18, United State Code, Section 1959(a)(6). The parties have entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), pursuant to which they have agreed that an appropriate sentence for Dominguez's crime is 24 months of incarceration followed by one year of supervised release. *See* ECF No. 108 (Plea Agreement) ¶ 8.[1] The government respectfully requests that the Court approve this agreement and impose a sentence of 24 months, as Probation also has recommended.

## II. FACTUAL BACKGROUND

### A. Procedural History

On August 12, 2021, a federal grand jury returned a three-count indictment charging six defendants with (1) Hobbs Act Conspiracy (Count One); (2) Conspiracy to Commit Murder in Aid of Racketeering (Count Two); and (3) Conspiracy to Commit Assault with a Deadly Weapon/Assault Resulting in Serious Physical Injury in Aid of Racketeering (Count Three). ECF No. 1. Defendant Dominguez was charged in Counts Two and Three only. The indictment alleges the defendants' membership in a racketeering enterprise known as "El Hoyo Palmas" (EHP), an associated-in-fact group consisting of Norteño street gang members and associates. On February 23, 2023, Dominguez pled guilty to Count Three as part of a global resolution of the charges set forth in the indictment. The government has agreed to dismiss Count Two (VICAR murder conspiracy) of the indictment as against Dominguez at the time of sentencing. Plea Agreement ¶ 14.

### B. Offense Conduct & Other Relevant Conduct

#### 1. Background of El Hoyo Palmas

EHP is subservient to the Nuestra Familia (NF) prison gang and, specifically, the Santa Clara County Regiment of the NF, operating in San Jose, California and the surrounding Santa Clara County

---

[1] The plea agreement erroneously includes a 3-year period of supervised release. The parties plan to modify the plea agreement at the hearing to reflect the statutory 1-year maximum period of supervised release authorized for the felony charge to which Dominguez has pled.

U.S. SENTENCING MEMO. RE DOMINGUEZ     1
21-CR-311 YGR

area.  (*See* PSR ¶¶ 1-12.)  EHP has been in existence in San Jose since the 1970s.  (PSR ¶ 13.)  EHP has its own logos, tags, hand gestures, and terminology to designate themselves in public settings, such as the letter "P" or the word "Palmas," the logo of the Pittsburgh Pirates professional baseball team, and Hawaiian style shirts with palm trees.  (PSR ¶ 15.)

The NF and EHP have common purposes, which include: committing crimes of violence to promote and enhance the reputation of the enterprise and to keep rivals gang members in fear of it; enriching leaders, members, and associates through trafficking of controlled substances and firearms and through the commission of robberies; and providing financial support to gang members who are charged with crimes or incarcerated.  (PSR ¶ 14.)

EHP, like other Norteño street gangs, has multiple "generations."  EHP is comprised of six generations.[2]  Each generation consists of several years' worth of members and has its own higher- and lower-ranking members.  Typically, one gains status within EHP based on the commission of violent acts on behalf of the gang (or the willingness to do so) or by making money through narcotics or other criminal ventures.  (*See* PSR ¶¶ 12, 14, 17.)  The six generations of EHP loosely reflect seniority within the gang, with the first generation being the oldest and the sixth generation being the newest.  Meetings are held regularly, at which members pay dues and receive information about gang-related activities.  During the meetings, attendees were generally separated by their respective generation.  Prospective members need to prove their worth to gain entrance into EHP.  Gaining entrance is often referred to as "being blessed."

EHP members are required to follow rules as dictated by both EHP and the NF more broadly.  For EHP members, these rules were centered around respect, contributing to the gang, and not cooperating with law enforcement.  (PSR ¶ 17.)  A violation of the rules can be meet with "DP" or "discipline," which often involves being assaulted by other members.  Other times a member can be "removed," which can include being killed.

---

[2] In approximately 2009-2010, the San Jose Police Department conducted a large takedown of the earlier generations of EHP, many of whom were/are incarcerated.  Consequently, the generations that were the most active during the period relevant to this indictment were the fourth, fifth, and sixth generations.

U.S. SENTENCING MEMO. RE DOMINGUEZ           2
21-CR-311 YGR

### 2. Underlying FBI Investigation

The FBI utilized multiple wiretaps in the Operation Quiet Storm/Grim Dawn investigation (e.g., the related cases—*see* PSR p. 2) into the NF and EHP. Regarding EHP, those wiretaps included interceptions captured on a telephone utilized by Dominguez:

| TELEPHONE USER | TARGET TELEPHONE |
| --- | --- |
| Juan Dominguez | TT6 |
| Jose Garcia | TT8, TT10 |
| Juan Gonzalez | TT9 |

Much of the evidence supporting the indictment in this case came from these intercepted communications, and through these intercepted communications, the FBI learned that Dominguez was the "channel" between the EHP street gang and the NF is prison.

### 3. Union City Robbery Conspiracy[3]

In early September 2018, several members of EHP conspired to rob drug dealers at a residence in Union City. From intercepted communications, the FBI learned of the conspiracy, which they were able to interrupt prior to its commission.

The conspiracy began when Defendant Caleb Eller[4] notified Defendant Jose Garcia of two marks (referred to in the intercepted calls as "licks") in an intercepted call on September 4, 2018. (TT8, Session 3058.) In that call, Eller informed Garcia that in one location the residents "push powder" (slang for cocaine) and said that he believed that by robbing the location, they would be able to "come up" with at least a "brick" (slang for kilogram) as well as money for another brick. Garcia asked, "What's the deal with them? We have to knock doors down? Is there an easy way in? Or wait for somebody?" Eller told him that the residents were two brothers who had already been robbed once before, and so he did not expect them to put up a fight, but that Garcia would have to "boot the door down and get it from them." (TT8, Session 3058.) Garcia responded, "Ok, ok, I don't give a fuck how

---

[3] Dominguez was not charged in Count One of the indictment. The government is including this section only to provide background on the nature of the conspiracy charge to which Dominguez has pled guilty.

[4] To date, Eller has not been located or arrested.

U.S. SENTENCING MEMO. RE DOMINGUEZ            3
21-CR-311 YGR

it goes down." (TT8, Session 3058.) Eller said he would give Garcia the address of the house, and later texted Garcia "Union City" and "Drives a black Mustang." (TT8, Sessions 3089, 3091.) Garcia then contacted Defendant Kyle Leonis via text message, writing: "I have a job for us" and "I'm a make sure after this you are blessed." (TT8, Sessions 3068, 3070, 3072, 3074.) Defendant Leonis later responded that he was "wit whatever boy." (PSR ¶ 17; TT8, Sessions 3151, 3154, 3156, 3158, 3160.) Eller and Garcia continued to talk about the robbery, with Eller noting that if the two brothers who lived at the robbery mark were "slapped up a bit," they would "give up" the drugs and money. (TT8, Session 3103.)

In the days following, Garcia and others went to Union City to locate the robbery mark and conduct surveillance. For example, on September 10, 2018, Garcia and Defendant Paul Valenzuela discussed going with Defendant Juan Gonzalez to Union City to take a "dry run" at the proposed robbery location. (TT8, Sessions 4259, 4284, 4295.) On September 17, 2018, Garcia and Gonzalez discussed additional surveillance that Gonzalez had done of the Union City location, and Gonzalez notified Garcia that he had seen a couple with a baby at the address. (TT9, Session 4830.) Gonzalez told Garcia that he planned to go back to the address and "post up" (conduct additional surveillance), and both Garcia and Gonzalez discussed "needing this," because things had been "slow" lately. (TT9, Session 4835.)

####    4.    Suspected "Leak" & Conspiracy to Assault the Suspected Informant

On September 20, 2018, based on the intercepted calls summarized above and others not summarized herein, the FBI conducted a search warrant at the Union City residence. On October 2, Eller informed Garcia that federal agents had gone to the house. Garcia then called Defendant Dominguez to tell Dominguez that the planned robbery was off. (TT10, Session 2764 (Garcia tells Dominguez: "The fucken alphabet boys got that address. You know the one.").) Garcia and Dominguez both suspected that there was a "loose screw" (i.e., an informant) in their crew who had notified the FBI of the anticipated robbery plot. (PSR ¶ 2(f); TT10, Session 2764, 2794.)

By October 14, intercepted communications revealed that Garcia believed that he had identified Victim-1 as the suspected informant. (TT10, Session 377 (Garcia says: "("I found the loose screw … it's in my own house").) Subsequent intercepted communications suggested that Garcia assaulted Victim-1 on October 14, and on October 15, Garcia told Dominguez in an intercepted call that Garcia

was told by "the homie" that Victim-1 needed to be "let go."  (PSR ¶ 2(g); TT6, Session 19315.)  On October 16, 2018, Victim-1 did not show up for work and cut off contact with Dominguez, Garcia, Gonzalez, Leonis, and Valenzuela.  Over the next two days, Dominguez was captured on intercepted communications with his fellow gang associates discussing what had been done to try and locate the alleged informant.  (*See* PSR ¶ 2(h); TT10, Session 4989 (call between Garcia and Dominguez, where Garcia says that Victim-1 had quit his job and not returned home, and Dominguez says, "Ya, he's gone" and notes that "we'll be ready" if he returns).)  During this time, Dominguez conspired with others to look for Victim-1 at Victim-1's home and his place of work, and by monitoring Victim-1's cell phone—which Dominguez had in his possession—in order to find Victim-1 and assault him as a form of discipline for violating a rule of the EHP enterprise.  (PSR ¶ 2(h).)

### III. Dominguez's Criminal History

Dominguez has a felony conviction from 2004 for possession of a controlled substance and a loaded weapon, robbery in the second degree, and vehicle theft.  The government agrees with Probation's calculations that Dominguez's total criminal history score is three, which places him in a Level II Criminal History Category.  (PSR ¶ 39.)

### IV. SENTENCING RECOMMENDATION

Consideration of all of the sentencing factors set forth in Title 18, United States Code, Section 3553(a) demonstrates that a 24-month sentence for Dominguez is sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a), paragraph (2).

The parties' proposed sentence reflects the seriousness of Dominguez's criminal activity—as a member of a notorious criminal street gang—to conspire with others to assault another member of the gang who Dominguez suspected of violating one of the gang's fundamental rules: no cooperation with law enforcement.  Dominguez's status within the gang is exemplified by the intercepted communications demonstrating that he served as a "channel" between EHP gang members and the NF.  Dominguez's statements and actions demonstrate that he was ready and willing to enforce the rules of his gang:  he repeatedly spoke with Garcia about finding Victim-1, and participated in efforts to locate Victim-1, including by monitoring Victim-1's cell phone.

As noted, the government does not dispute Probation's determination that Dominguez has a

Criminal History Category of II (*see* PSR ¶ 39), and the parties agreed in the plea agreement to an offense level of 15, after acceptance of responsibility. That yields a guidelines calculation of 21 months to 27 months (*see* PSR ¶ 63). The parties, and Probation, agree that an appropriate disposition for Dominguez is 24 months, which is a mid-range guidelines sentence that takes into account the fact that (1) Dominguez accepted responsibility in this case as part of a global resolution with his co-defendants, which resolution has facilitated a speedy resolution of the matter (and prior to cooperators being identified); (2) this is Dominguez's first federal offense; and (3) Dominguez grew up in an area of San Jose where gang violence was common, which may have led him to believe that he that he had few other options to pursue a different life. Considering these factors, the parties' proposed 24-month sentence is a significant custodial sentence that is "sufficient but not greater that necessary" to satisfy the sentencing goals of Title 18, United States Code, Section 3553.

## V.  CONCLUSION

For the reasons set forth above, the government requests that the parties' plea agreement pursuant to Rule 11(c)(1)(c) be accepted by the Court and that the defendant be sentenced to 24 months of imprisonment followed by one year of supervised release.

DATED: June 15, 2023                               Respectfully submitted,

THOMAS A. COLTHURST
First Assistant United States Attorney

_____/s/_____
MARI OVERBECK
Assistant United States Attorney